**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872.365.7060

GARY M. KLINGER (PHV forthcoming)
gklinger@milberg.com
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: 866.252.0878

**SAUDER SCHELKOPF**
Joseph G. Sauder (PHV forthcoming)
Joseph B. Kenney (PHV forthcoming)
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com
*Attorneys for Plaintiff*

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Daniel O. Herrera (PHV forthcoming)
Paige Smith (PHV forthcoming)
135 S. LaSalle St., Suite 3200
Chicago, Illinois 60603
Phone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
psmith@caffertyclobes.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYMAN KHATIB, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ECOVACS ROBOTICS, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>Comp. Filed:<br>Trial Date:    Not Yet Set<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ayman Khatib brings this action against Defendant Ecovacs Robotics, Inc., ("Defendant" or "Ecovacs"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

**INTRODUCTION**

1.      This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of current and former owners of Ecovacs Deebot robot vacuums (hereinafter referred to as the "Class Devices" or "Devices"). Ecovacs designed, manufactured, marketed and warranted the Class Devices.[1] The Class Devices include without limitation the following models: N79, N79S, N79SE, 901, 920, T10, X1 Omni, X1 Turbo, N8 Pro, N8 Pro+, 500, Ozmo N7, T8, T8 AIVI, Ozmo T8, U2, U2 Pro, 600, Ozmo 960, 710, 711, 711S, 500, and all other models within the Deebot line of products, all of which are sold with motors that are the same or materially indistinguishable from a design, engineering and manufacturing perspective.

2.      The Class Devices contain a motor that is defective with respect to materials, workmanship and/or design in that is easily damaged to the point of premature failure, through normal use, by commonplace dirt, dust, and hair. The motor does not contain an adequate barrier that protects against accumulation of dirt, dust, and hair, and allows particulates to easily penetrate the motor. On information and belief, the motor is also manufactured from substandard materials that fall below the industry standard (collectively, the "Defect").[2] While the Defect is present in every Device at the point of sale, the Defect typically manifests through motor failure accompanied by an error code signaling a "main brush malfunction," typically within the one-year limited warranty or just after expiration.

3.      Due to this Defect, the Devices are substantially certain to fail prematurely and are rendered unusable.

4.      Not only did Defendant fail to disclose and actively conceal the Defect, it did not reveal that the existence of the Defect would diminish the intrinsic value of the Class Devices.

---

[1] Plaintiff reserves the right to amend or add to the vacuum models included in the definition of Class Devices after conducting discovery.
[3] https://www.ecovacs.com/us/about-ecovacs (accessed April 28, 2023)

5.     Defendant has long been aware of this Defect, yet it has routinely refused to repair the Class Devices without charge when the Defect manifests, and on information and belief, even when Class Devices are still within Defendant's warranty period.  Indeed, in many cases Defendant even has refused to disclose the Defect's existence when owners of Class Devices contact Defendant to complain that their Class Devices are displaying symptoms consistent with the Defect and/or has charged owners multiple times for multiple replacements/repairs.

6.     Many other owners of the Class Devices have communicated with Defendant and/or Defendant's agents to request that they remedy and/or address the Defect and/or resultant damage at no expense and/or under the terms of Defendant's warranty.  Defendant has routinely failed to do so, which has resulted—and will continue to result—in owners and lessees of Class Devices having to spend substantial money to repair the Defect and/or purchase replacement vacuums.

7.     Upon information and belief, Defendant has also refused to take any action to correct this concealed Defect when it manifests in the Class Devices outside of the warranty period.  Since the Defect can manifest shortly outside of the warranty period for the Class Devices—and given Defendant's knowledge of this concealed Defect—Defendant's attempt to limit the warranty with respect to the Defect is unconscionable and unenforceable.

8.     Based on pre-production testing, pre-sale durability testing, bench testing, warranty and post-warranty claims, consumer complaints on forums monitored (and responded to) by Defendant, and consumer complaints made to and by Class Device retailers, and directly to Defendant, Defendant was aware of the Defect and omitted the existence of and/or fraudulently concealed the Defect from Plaintiff and members of the Class.

9.     Plaintiff is also informed and believes, and on that basis alleges, that as the number of complaints about the Defect increased, Defendant was forced to acknowledge internally that the Class Devices suffer from an inherent Defect.

10.     Defendant omitted and/or concealed the existence of the Defect to increase profits by selling additional Class Devices. Knowledge and information regarding the Defect

were in the exclusive and superior possession of Defendant and its retailers, and this information was not provided to Plaintiff and members of the Class.

11.     Despite notice and knowledge of the Defect, Defendant has not recalled the Class Devices to repair the Defect, remedied the Defect in Class Devices, offered its customers a suitable repair or replacement free of charge, and/or offered to reimburse its customers who have incurred out-of-pocket expenses to repair the Defect.

12.     Had Plaintiff and other Class members known about the Defect at the time of purchase, they would not have bought the Class Devices or would have paid substantially less for them.

13.     As a result of Defendant's unfair, deceptive and/or fraudulent business practices, owners of the Class Devices, including Plaintiff, have suffered an injury in fact, ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendant were conducted in a manner giving rise to substantial aggravating circumstances.

14.     As a direct result of Defendant's wrongful conduct, Plaintiff and members of the Classes have been harmed and are entitled to actual damages, including damages for the benefit of the bargain they struck when purchasing their Class Devices, the diminished value of their Class Devices, attorneys' fees, costs, restitution, and injunctive relief. Specifically, Plaintiff seeks the following potential remedies: a full refund or partial refund based on the unlawful price premium charged by Defendant; immediate provision of robot vacuums that do not suffer from the Defect at Defendant's expense, as well as reimbursement for any parts and labor costs incurred by any Class members who paid to have their Class Devices repaired or replaced, as well as replacement of any components damaged as the result of the Defect; provision of a temporary replacement robot vacuum while repair of the Defect is pending; buyback of the Class Devices; compensation for any additional sums spent on any repairs to address the Defect; restitution for purchase of extended warranties that will go unused; extended warranties after installation of a non-defective robot vacuum; compensation for the loss in value and depreciation of the Class Devices; and punitive or other damages for Defendant's knowing fraud.

15.     Accordingly, Plaintiff brings this action to redress Defendant's violations of the California's Consumer Legal Remedies Act and California Unfair Competition Law, breach of express and implied warranty, fraudulent concealment, and unjust enrichment.

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(b) & (d), because maintains its principal place of business in, and is thus a resident of, this judicial district, maintains minimum contacts with the United States, this judicial district, and this State, and it intentionally avails itself of the laws of the United States and this state by conducting a substantial amount of business in California. At least in part because of Defendant's misconduct as alleged in this lawsuit, the Class Devices ended up in residences and businesses located in California. For these same reasons, venue properly lies in this District and vicinage pursuant to 28 U.S.C. §§ 1391(a), (b) and (c).

**PARTIES**

**A.     Plaintiff**

18.     Plaintiff Ayman Khatib ("Plaintiff") is a citizen and resident of the State of California who resides in Moreno Valley, California.

19.     In or about November 2021, Plaintiff purchased a new Ecovacs Deebot N79 vacuum from a third-party retailer website.

20.     Prior to purchasing his Class Device, Plaintiff visited Defendant's website to research Defendant's various models of robot vacuums, during which he viewed Defendant's website advertisements and Defendant's description of the N79 Class Device's features and attributes described herein.

21.     Approximately two months after purchasing his N79 Class Device—in or about January 2022—Plaintiff heard it beep four times and then it ceased working.

22.     Within a few days, Plaintiff called Defendant's customer service number to seek a repair or replacement vacuum, but Defendant's customer service agents continuously transferred Plaintiff from one rep to the next until the call dropped without Plaintiff having a meaningful opportunity to discuss the Defect with any agent of Defendant. Because Defendant's customer service agents did not provide Plaintiff with an opportunity to discuss the Defect in his Class Device, he was unable to submit a formal warranty request to Defendant.

23.     On or about that same day, Plaintiff then contacted the third-party retailer from which he purchased his Class Device, to complain of the Defect, but the retailer informed him that they were unable to fix it or provide him with a replacement vacuum from Defendant.

24.     Within or about a week of experiencing the Defect, Plaintiff took his Class Device to a local vacuum repair shop, which charged him $150 for a diagnostic fee, only to ultimately inform Plaintiff that they were unable to fix the Defect in his Class Device.

25.     Due to Defendant's refusal to replace or repair his N79 Class Device, which was then inoperable, Plaintiff was forced to purchase a replacement robot vacuum from a different manufacturer for $399.

26.     Plaintiff viewed and relied upon the representations on Defendant's website described herein about the N79 Class Device's features and attributes when making his purchasing decision, including that the Device would function as a robotic vacuum cleaner.

27.     Had Plaintiff known or otherwise been made aware of the Defect in the Class Devices and Defendant's refusal to repair or cure it, he would not have purchased his Class Device or otherwise would have paid significantly less for it.

28.     When Plaintiff purchased his Class Device, he reasonably expected that it would function as advertised and was free from defects and/or Defendant could, and would, properly repair and eradicate any such defects.

29.     At all times relevant herein, Plaintiff operated his Class Device in a reasonably foreseeable manner and as it was intended to be used.

30.     Plaintiff has suffered an ascertainable loss as a result of Defendant's unfair and deceptive conduct, breach of contractual, common law and statutory duties, and omissions and/or misrepresentations associated with the Defect and associated risk, including but not limited to, out-of-pocket losses and diminished value of his Class Device.

31.     Neither Defendant nor any of its agents, retailers or other representatives informed Plaintiff of the Defect prior to the purchase of the Class Device.

32.     Plaintiff desires to purchase robotic vacuums in the future. If Defendant's Devices functioned fully as advertised and were not sold with the Defect at an inflated price, Plaintiff would likely purchase the Device again in the future. However, Plaintiff is unable to rely on Defendant's labeling and advertising in the future because Plaintiff cannot ascertain whether the Defect is present prior to repurchasing the Device.

**B.    Defendant**

33.     Defendant Ecovacs Robotics, Inc. is a Delaware corporation with its principal place of business at 1500 Fashion Island Blvd. Ste. 201, San Mateo, California 94404.

34.     At all times relevant to this action, Defendant and/or its agents designed, manufactured, distributed and sold the Devices from its principal place of business in California, such that application of California law to Defendant comports with due process, and warranted the Class Devices throughout the United States. Defendant and/or its agents designed, manufactured, and caused to be distributed the Class Devices while knowing about the Defect, without either disclosing it at the time of sale or attempting to remedy it.  Defendant and/or its agents also developed and disseminated the labeling, owner's manuals, warranty booklets, advertisements, and other promotional materials relating to the Class Devices from its principal place of business in California.

## FACTUAL ALLEGATIONS

**A.    The Defect**

35.     Defendant Ecovacs manufactures the Class Devices consisting of the Deebot robot vacuum product line. Defendant describes itself as a company "at the forefront of innovation in smart home robotics, exploring new ways for robots to transform homeowners'

lives."[3] Defendant has "more than 24 years of work in service robotics."[4] According to Defendant, "Innovation is the heart of ECOVACS's mission. Our priority has always been to invest in technology basics for the *long term* – in home robotics' R&D and its value chain of technologies from integration of chips and sensors to managing data and AI applications."[5] "Taking pride in our technology creativity, ECOVACS is committed to expanding our intellectual property portfolio, to guarantee quality for our customers around the world."[6]

36.    Robot vacuums are devices capable of automatically cleaning floors with minimal guidance. On its website, Defendant advertises the Class Devices as a "multi-surface robotic vacuum cleaner" and an effort-saving product that "efficiently cleans your floor and has an appropriate cleaning mode for every job"; a "versatile robot for deep cleaning"; and "With the V-shaped main brush, DEEBOT sweeps, lifts and vacuums in a single pass for more lifting of dirt and dust especially on carpets."[7]

37.    The Class Devices each contain a defective motor that is easily damaged to the point of premature failure, through normal and foreseeable use and operation, by commonplace dirt, dust, and hair. The motor does not include a barrier that adequately protects against accumulation of such particulates and allows particulates to easily penetrate the motor, and is manufactured from substandard materials prone to failure that fall short of industry standards. The motor typically fails within or very shortly after expiration of the one-year limited warranty.

38.    The motor is central to the performance of the Class Devices. Absent a functioning motor, the Class Devices are incapable of use and are worthless. Due to the Defect, a vital component of the Class Devices are substantially certain to fail rendering the products wholly inoperable long before expiration of their useful life.

---

[3] https://www.ecovacs.com/us/about-ecovacs (accessed April 28, 2023)
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] https://www.ecovacs.com/global/deebot-robotic-vacuum-cleaner/DEEBOT-N79S (accessed April 28, 2023).

CLASS ACTION COMPLAINT

39.     It is generally recognized that modern robotic vacuum cleaners should last at least four to six years, and certainly more than one year.[8]

40.     Industry standards applicable to robot vacuums dictate that the motor must be protected against excessive exposure to dirt, dust, and hair. This can be accomplished in various ways, including proper placement of the motor, use of a fully protective casing, and the use of durable materials. The motors for the Class Devices lack such features, notwithstanding that these alternatives and features have been available for decades.  However, Ecovacs chose to manufacture the products using outdated and defective technology in an effort to save costs and force consumers into purchasing a replacement unit.

41.     The Defect renders the Class Devices unfit for the ordinary purpose for which they are used, which is to consistently and automatically vacuum floors without human intervention.  The Defect causes the motor to fail in an unreasonably accelerated manner, rendering the Devices unusable.

42.     Had Plaintiff, Class members, and the consuming public known that the Devices were defective and were substantially certain to prematurely fail, they would not have purchased the Devices at all, or on the same terms or for the same price.

**B.     Defendant's Knowledge of the Defect**

43.     Defendant, through its (1) public acknowledgement of the problem; (2) own records of customers' complaints, (3) supplier repair records, (4) warranty and post-warranty claims, and (5) internal pre-sale durability testing and internal investigations, has always known of the Defect in the Class Devices, including long before Plaintiff's purchase in November 2021. Yet, at no time has Defendant disclosed the Defect to consumers or otherwise warned them about the Defect, pre-sale, despite knowing the Defect persists today.

44.     Defendant failed to adequately research, design, test and/or manufacture the Class Devices before warranting, advertising, promoting, marketing, and/or selling them as suitable for use in an intended and/or reasonably foreseeable manner.

---

[8] https://www.forbes.com/sites/forbes-personal-shopper/article/best-robot-vacuums/?sh=52fb9c2e6716

45.    Defendant is experienced in the design and production of robot vacuums such as the Class Devices, and has designed service robotics for more than twenty-four years. As an experienced manufacturer, Defendant conducts tests, including pre-sale durability testing, to verify the vacuums it sells are free from defects and align with Defendant's specifications and intended use of the vacuums.

46.    Defendant knew of the Defect and its associated manifestations and damage when performing quality control metrics on the Class Devices and made no substantive modifications to eliminate the Defect.

47.    Defendant's knowledge of the Defect is directly established through hundreds of consumer complaints that symptoms of the Defect manifested in the Devices resulting in wholesale failure.  These consumer complaints are not isolated.  Moreover, Defendant is aware of these consumer complaints because it regularly reviews and responds to complaints submitted on third-party retailer websites including Amazon and Walmart, and reviews and responds to complaints posted on the product listings on Defendant's website. Examples of consumer complaints referencing the Defect, dated prior to Plaintiff's purchase, are shown below.

48.    Amazon.com[9]:

★★★☆☆ **Main brush** malfunction that won't ever be fixed
By Adelee in the United States on March 11, 2019
This product worked great for about 3 months. Then it had malfunction after malfunction and now it has stopped working for good it would seem. For the last few months it will only run for about 10 seconds then beep saying "main brush malfunction". No matter what I do, clean brush, or replace brush and all other parts, recheck to make sure it's all secured properly, it doesn't work! Very annoying and disappointing. I think it may be better to stick with a traditional vacuum. see less

---

[9] https://www.amazon.com/ECOVACS-Robotic-Cleaner-Low-pile-Connected/dp/B06XVXRYTM#customerReviews (accessed April 28, 2023).

★☆☆☆☆ **WON'T LAST - MAIN BRUSH MALFUNCTION**

By JWus in the United States on May 31, 2019

Well, it works good for a while. The first one I had lasted almost a year, then, bam! Main brush malfunctions, repeatedly. Try to clean it, replace parts, run it without the main brush in, still main brush malfunction after oh say, 1 minute.

They did send me one replacement. It also failed to last one year, and the same problem occurred. I called their technical support hotline, and they basically told me there is nothing they can do for me. And that a online service center website would be opening in 3 months... Thanks a lot ECOVACS, this is last product I'll purchase from you all. see less

★☆☆☆☆ **Main brush malfunction. It's a dud.**

By Dlee31 in the United States on September 10, 2018

This main brush malfunction seems to be a common theme. I received this as a baby shower gift, hoping that it would cut down on my cleaning with baby no. 4 on the way. It worked fine for about 2 months. In fact, I loved it. It couldn't stand up to our German shepherds shedding, but really only the shopvac stands a chance with that anyway. We got the dreaded "main brush malfunction" error message. My husband is a tinkerer and took the whole thing apart, cleaned it, and put it back together, confident that it was going to work. The beeping started again. I'm sad because I really have no recourse, other than to warn people about this particular model being defective. see less

★★☆☆☆ **Main brush malfunction**

By Jonathan Bustamante in the United States on January 9, 2019

I purchased this vacuum last July and had no problems whatsoever up until about a week ago. Now it constantly stops and beeps and says main brush malfunction. I purchased and replaced all the brushes and ran it for the first time with the new brushes and it still constantly stops every 2 minutes and says main brush malfunction. Nothing is jammed in the main brush i fits perfectly into the slots. Everything is as it should be except it won't clean for more than a few minutes. This little guy was amazing up until now. Really bummed that it just started malfunctioning.

Update 1: Contacted customer support and was advised to run it without main brush, but it's still having the same error. see less

49.    Amazon.com[10]:

**Q: main brush error**

**A:** Hi,

I'm sorry if your Deebot is not working properly. Let me help you out.

Kindly try the steps here:

1. Please take the main brush out and run the robot without brush to see if it works properly.

2. If the robot runs normally without main brush, please check main brush for tangled hair or debris and use the Multi-Function Cleaning Tool to cut off and remove any hair tangled around the main brush, especially around the two side caps.

3. If the robot doesn't run normally without main brush, there should be some problem with the main brush motor, we will get your unit exchanged." see less

By MK in the United States on December 9, 2018

★☆☆☆☆ **Main brush motor failure after a year-and-a-half of very light use.**

By Nick… in the United States on July 21, 2019

I bought this vacuum to clean up my tile floors, which it did a decent job at for a year-and-a-half. It should be noted that this vacuum will absolutely not replace a broom. If you want it clean floor, you'll still have to sweep almost as regularly as you usually do. What this vacuum offers is a less dirty floor. Unfortunately, this vacuum is quite loud. As a result, having it run while trying to watch TV or have a conversation is frustrating. Subsequently, it got little use in our household. Regardless of this fact, after a year-and-a-half, it broke. According to the manual, it simply had a dirty main brush (red light and 4 beeps) . When cleaning it didn't work, I got ahold of customer service, who had me perform several tests. They determined it was a main brush motor failure. You could imagine how surprised I was of this given that the vacuum was only used twice a month or so. I would recommend you opt for a different brand. see less

[10] https://www.amazon.com/ECOVACS-N79S-Connectivity-Controls-Self-Charging/dp/B077HW9XM7#customerReviews (accessed April 28, 2023).

CLASS ACTION COMPLAINT

1

2 ★★★☆☆ **Avoid this brand if posible since no spare motor for** <mark>main brush</mark>
By BAO N MAI in the United States on May 25, 2020

3 Overall ok for the price but it will not worth the pain, the time you spent to work on the <mark>main brush</mark> malfunction error

4 message. I checked out all fixes available online, clean up the motor, change out whole new set of <mark>brushes</mark>, dirt compartment, clean up the motor up to keep it running, but it stopped and gave <mark>main brush</mark> malfunction error message. I took out the <mark>main

5 brush</mark> to test and same error. So the motor weak but there is no replacement motor from Ecovac. see less

6 ★☆☆☆☆ **9 months Great, until** <mark>main brush</mark> **malfunction error.**
By C in the United States on September 24, 2019

7 Was great for 9 months and now I'm getting a <mark>main brush</mark> malfunction. I have cleaned and tried all troubleshooting, now I'm getting parts. Will update review. Update: I have replaced all the <mark>brushes</mark> and thoroughly cleaned it.... Still getting <mark>main brush</mark>

8 error. Didn't even last a year. Don't recommend for a daily used vacuum robot. Will see if they refund or fix. see less

9 ★☆☆☆☆ **3 died just after a year - Main** <mark>brush</mark> **malfunction**
By John in the United States on February 4, 2020

10 I bought three of these as alternatives to I bought Roomba's, and all three have died within a year due to a "<mark>main brush</mark>

11 malfunction". DEEBOT Support basically has nothing to say because it is outside the warranty. But it really is amazing how just outside of that warranty period, all three of these have had the same issue. see less

12

13 ★☆☆☆☆ <mark>MAIN BRUSH</mark> MALFUNCTION
By jose malpica in the United States on March 28, 2019

14 After 10 months of use the ecovacs N79S stop working, <mark>main brush</mark> malfunction error. When I contact Ecovacs customer support they denied my replacement because I live in Puerto Rico. I have explain to the representative that Puerto Rico as

15 a territory of the United Stated use USPS, UPS and FEDEX as the only postal services here in Puerto Rico. They still denied the replacement. see less

16

17     50.    Walmart[11]:

18

19

20 

21

22

23

24

25

26

27 _____

28 [11] https://www.walmart.com/reviews/product/267263855?sort=rating-asc (accessed April 28, 2023).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

★☆☆☆☆                                    7/26/2019

**Bad vacuum**

Bought ecovacs on a friend's recommendation, bad choice. Vacuum worked for 2 months then quit, tried changing battery, twice, replacing the unit. Again worked for a day or two, then quit. Lost the money, they wouldn't take it back. I do not recommend it.

Santeen

👍 0     👎 0

Supplier Response

Hello. We're sorry to hear the DEEBOT has run into some trouble. We'll be happy to help locate the source of the issue and get the unit up and running the way it should. Please reach out to us at customerservice@ecovacs.com attention Steve and we'll assist with the issue right away.  <u>See less</u>

★☆☆☆☆  **Verified Purchaser**            10/2/2019

**Disappointed**

My worked until the day my warranty ended. One of the little brooms are presenting an error and the robot is not working for months since then! I am very disappointed!!! [This review was collected as part of a promotion.]

Camilleycaca

👍 0     👎 0

Written by a **ecovacs.com** customer

★★☆☆☆  **Verified Purchaser**           12/12/2019

**Okay while it lasted**

We purchased this after we got a dog to keep up with the dog hair and every thing else. It was fine while it lasted. It was a little noisy but not too bad. It ran for about two hours which was nice. But it only lasted a year and a half and according to support the main brush motor broke and there was nothing we could do. We only used it moderately. Not every day at all. Sometimes not even once during the week. I was so upset when support said there was nothing that I could do. What a waste of money for a short amount of time. Will not buy again. [This review was collected as part of a promotion.]

Nadine0893

👍 0     👎 0

Written by a **ecovacs.com** customer

★☆☆☆☆                                    7/20/2019

It was great while it worked. Unfortunately, my Deebot stopped working a week after the return window ended. I contacted the company directly and they were not much help. Save yourself the $ and buy something else.

cgonzales15

👍 0     👎 0

Supplier Response

Hello. We're sorry to hear the DEEBOT has run into some trouble. We'll be happy to help with any issue the unit has been encountering and can be reached at customerservice@ecovacs.com attention Steve to assist.  <u>See less</u>

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12        51.    Ecovacs.com[12]:

13

14

15    **Chris10190** · 3 years ago                                    1
                                                                  answer
16    I have the deebot N79 and now it will run for a few seconds and then stop and beep for 30 seconds and not run. Then I press it to run again and it will run for a few seconds and beep again. What could be wrong?

17

18    Originally posted on DEEBOT N79S Floor Cleaning Robot

19    Answer this Question

20    **Ecovacs Customer Care** · 3 years ago
      This could be a main brush malfunction. Please try running the robot without the main brush installed to see if the error code
21    persists. If you could please contact us at customerservice@ecovacs.com attention Steve with the results of the test we'll be
      happy to assist you further.

22

23

24

25

26

27

      _____
28    [12] https://www.ecovacs.com/us/deebot-robotic-vacuum-cleaner/DEEBOT-N79W#reviews
      (accessed April 28, 2023).

CLASS ACTION COMPLAINT

**Austin1234** · 4 years ago

My DEEBOT will run for a few minutes before stopping and letting out 4 beeps with a continuous glowing red light. It is properly charged, no debris in the sensors, empty dust bin, clean filters, and the brushes are clean. What am I missing?

---

Originally posted on <u>DEEBOT N79W Floor Cleaning Robot</u>

Answer this Question

---

**Ecovacs Customer Care** · 4 years ago

Please try the following troubleshooting steps to fix this issue:

1. Please take the main brush out and run the robot without the brush to see if it works properly.
2. If the robot runs normally without the main brush, please check the main brush for tangled hair or debris and use the Multi-Function Cleaning Tool to cut off and remove any hair tangled around the main brush, especially around the two side caps.

If the issue persists, we can be reached at customerservice@ecovacs.com to assist further.

52.    Not only does the number of complaints over the course of several years demonstrate that Defendant was on notice of the Defect, but the substance of the complaints shows that consumers were surprised, frustrated, and disappointed with the poor build quality of the Device and its motor, and would not have purchased the Devices had the Defect been disclosed.

**C.    Defendant's Duty to Disclose the Defect**

53.    <u>Superior Knowledge</u>: As described above, Defendant is experienced in the design and manufacture of robot vacuums such as the Class Devices. As an experienced manufacturer, Defendant conducts tests, including pre-sale durability testing, to verify the vacuums it sells are free from defects and align with Defendant's specifications and intended use of the vacuum. Defendant also receives, monitors, and aggregates consumer complaints regarding the defect. A reasonable consumer would not be on notice of the Defect and does not have access to the granular data in Defendant's possession.

54.    <u>Active Concealment</u>: Defendant actively concealed the Defect.  As described above, Defendant actively concealed the defect from Plaintiff by, among other things, refusing

to respond to his inquiry.  Further, in response to consumer complaints within the warranty period regarding the Defect, Defendant replaced the defective motors with the same defective component to ensure that the defect will manifest again outside of the warranty period, or denied the warranty claim entirely. Defendant also provided troubleshooting instructions implying that any issues are the fault of the user and result from improper use, while knowing that the Devices are defective.

55.    <u>Partial Representations</u>: As described above, Defendant represents on its website that each Device functions as a "multi-surface robotic vacuum cleaner" that "provides a versatile, everyday cleaning solution. With its multiple cleaning modes, DEEBOT N79W efficiently cleans your floor and has an appropriate cleaning mode for every job. You can control your robot with the ECOVACS Home App, a simple remote, or smart home system, and enjoy some free time while DEEBOT N79W cleans for you! Smart Motion. Auto, Edge, and Spot Modes. Schedule Cleanings. Automatic Charging."  The same and substantively identical representations are made on the representations of third-party retailer websites, which were written by Defendant and provided to them by Defendant. Yet Defendant fails to disclose that the Defect is substantially certain to manifest within one year, let alone shortly after expiration of the one-year warranty period.  By disclosing some beneficial attributes about the Devices and describing its performance, Defendant is obligated to disclose material Defects that negatively affect the useful life of the Devices.

56.    The Defect affects the central functionality of the Devices in that it renders the Devices inoperable.

57.    Defendant could have and should have prominently disclosed the Defect on the product listings on its website, on product packaging, and to third-party retailers.  Had Defendant disclosed the Defect in this manner, consumers would have been aware of it.

**D.    Warranties Related to the Defect**

58.    Defendant's website assures customers that it "stands behind the products we build" and Defendant's Class Devices come with a one-year "NEW PRODUCTS Limited Warranty" (the "Warranty") through which Defendant represents to customers that the Class

Devices "will be free from defects in materials and workmanship when used under normal conditions for one (1) year from the product purchase date."[13] Accordingly, the Warranty is the applicable warranty related to the Defect.

59.    Defendant's website informs Class Device owners that if they experience issues with their Class Devices, such as the Defect, Defendant "will, at its option, repair or replace with a new or refurbished product or parts, any product or parts determined to be defective."[14] Defendant instructs owners of Class Devices to contact Defendant's customer service email address to request warranty repairs. Upon information and belief, many owners have contacted Defendant to seek warranty repairs of their Class Devices for the Defect.

60.    Despite Defendant's knowledge of the Defect—and presumably how to appropriately remediate and prevent the Defect from recurring—Defendant refuses to provide appropriate warranty coverage, instead (when it actually answers complaining customers' phone calls and acknowledges their warranty claims) informing customers that the Defect is not covered by the warranty or provides repairs that remedy the Defect only temporarily or replacement Class Devices that are equally defective.

61.    Defendant's attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect. Likewise, the time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class because, *inter alia*, (1) the Defect is a latent defect that takes time to manifest, often doing so after expiration of the 1-year warranty period, which Plaintiff and Class members had no way of knowing at the time they purchased their Class Devices, and (2) a gross disparity in bargaining power existed between Defendant and the Class members, and Defendant knew or should have known that the Class Devices were defective at the time of sale and would fail well before their useful lives.

---

[13] https://www.ecovacs.com/us/support/warranty (last visited May 11, 2023).
[14] *Id.*

1

**TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

2      62.     Any applicable statutes of limitation have been tolled by Defendant's knowing

3 and active concealment of the Defect as well as the omissions alleged herein. Through no fault

4 or lack of diligence, Plaintiff and members of the Class were deceived regarding the Defect and

5 could not reasonably discover the defect or Defendant's deception with respect to the Defect.

6      63.     At all times, Defendant was and is under a continuous duty to disclose to Plaintiff

7 and members of the Class the true standard, quality, character, nature and grade of the Class

8 Devices and to disclose the Defect. Instead, Defendant omitted disclosure of the presence of the

9 Defect and continues to sell Class Devices that contain the Defect, rather than repairing them

10 prior to sale. Defendant actively concealed the true standard, quality, character, nature and grade

11 of the Class Devices and omitted material information about the quality, reliability,

12 characteristics and performance of the Class Devices. Plaintiff and members of the Class

13 reasonably relied on Defendant's knowledge and concealment of the facts alleged herein.

14      64.     Consumers, like Plaintiff, could not have reasonably discovered the Defect prior

15 to symptoms of the defect manifesting post-purchase.  Plaintiff did not discover the defect until

16 his Device failed.

17      65.     For these reasons, all applicable statutes of limitation have been tolled based on

18 the discovery rule and Defendant's fraudulent concealment; further, Defendant is estopped from

19 relying on any statutes of limitations in defense of this action.

20                              **CLASS ALLEGATIONS**

21      66.     Plaintiff brings this action pursuant to the provisions of Rules 23(a), 23(b)(2),

22 and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following

23 proposed classes:

24      **Nationwide Class:**

25      All persons who purchased a Class Device in the United States.

26      **Multi-State Class (Implied Warranty Non-Privity)**:

27      All persons who purchased a Class Device in the following States: Alaska; Arkansas;

28      California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii;

Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; Wyoming.

**California Class:**

All persons who purchased a Class Device in California.

67.    Hereinafter, the Nationwide Class, Multi-State Class, and California Class are collectively referred to as the "Class." Excluded from the Class are Defendant, its employees, officers, directors, legal representatives, heirs, successors, wholly- or partly-owned, and its subsidiaries and affiliates; Defendant's retailers; proposed Class counsel and their employees; the judicial officers and associated court staff assigned to this case and their immediate family members; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.

68.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

69.    <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Class Devices may be identified during the pendency of this action and all owners notified by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice. The Class members may be easily derived from Defendant's sales records.

70.    <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a.    Whether Defendant engaged in the conduct alleged herein;

      b.    Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed the Class Devices into the stream of commerce in the United States;

c.  Whether Defendant knew about, and failed to disclose, the Defect at the time Plaintiff and the Class members purchased their Class Devices;

d.  Whether Defendant designed, manufactured, marketed, and distributed the Class Devices knowing that the Defect could and would occur;

e.  Whether Defendant's conduct violates consumer protection statutes, false advertising laws, sales contracts, warranty laws, and other laws as asserted herein;

f.  Whether Defendant owed a duty to warn Plaintiff and Class members about the Defect;

g.  Whether Plaintiff and the other Class members overpaid for their Class Devices;

h.  Whether Defendant breached the warranty by failing to properly inspect and repair the Defect;

i.  Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

71.  <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's wrongful conduct as described above.

72.  <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

73.  <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

74.     Superiority. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## **VIOLATIONS ALLEGED**

## **FIRST CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (NON-PRIVITY)**
**(On behalf of the Residents of the Following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; Wyoming)**

75.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

76.     Plaintiff's individual claim is brought under the laws of the State in which he purchased his Class Device (California), as are the claims of absent members of the Multi-State Class and California Class who purchased their Class Devices in the States identified below.

77.     Plaintiff bring claims on behalf of the Multi-State Class under the laws of the following States as codified below:

    a.     Alaska Stat. §§ 45.02.314, et seq.;

    b.     Ark. Code Ann. §§ 4-2-314, et seq.;

| | | |
|---|---|---|
| 1 | c. | Cal. Civ. Code §§ 1792, 1791.1, et seq. (the "Song-Beverly Act"); |
| 2 | d. | Colo. Rev. Stat. Ann. §§ 4-2-314, et seq.; |
| 3 | e. | Conn. Gen. Stat. §§ 42a-2-314, et seq.; |
| 4 | f. | Del. Code Ann. Tit. 6, §§ 2-314, et seq.; |
| 5 | g. | D.C. Code §§ 28:2-314, et seq.; |
| 6 | h. | Haw. Rev. Stat. §§ 490:2-314, et seq.; |
| 7 | i. | Ind. Code §§ 26-1-2-314, et seq.; |
| 8 | j. | Kan. Stat. Ann. §§ 84-2-314, et seq.; |
| 9 | k. | La. Civ. Code Ann. Art. 2520, et seq.; |
| 10 | l. | Md. Code Ann., Com. Law §§ 2-314, et seq.; |
| 11 | m. | Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, et seq.; |
| 12 | n. | Mass. Gen. Laws ch. 106, §§ 2-314, et seq.; |
| 13 | o. | Mich. Comp. Laws Ann. §§ 440.2314, et seq.; |
| 14 | p. | Minn. Stat. §§ 336.2-314, et seq.; |
| 15 | q. | Miss. Code Ann. §§ 75-2-314, et seq.; |
| 16 | r. | Mo. Rev. Stat. §§ 400.2-314, et seq.; |
| 17 | s. | Mont. Code Ann. §§ 30-2-314, et seq.; |
| 18 | t. | Neb. Rev. Stat. Ann. §§ 2-314, et seq.; |
| 19 | u. | Nev. Rev. Stat. §§ 104.2314, et seq.; |
| 20 | v. | N.H. Rev. Stat. Ann. §§ 382-A:2-314, et seq.; |
| 21 | w. | N.J. Stat. Ann. §§ 12A:2-314, et seq.; |
| 22 | x. | N.M. Stat. Ann. §§ 55-2-314, et seq. |
| 23 | y. | N.D. Cent. Code §§ 41-02-31, et seq.; |
| 24 | z. | Ohio Rev. Code Ann. §§ 1302.27, et seq.; |
| 25 | aa. | Okla. Stat. Tit. 12A, §§ 2-314, et seq.; |
| 26 | bb. | 13 Pa. Stat. Ann. §§ 2314, et seq.; |
| 27 | cc. | R.I. Gen. Laws §§ 6A-2-314, et seq.; |
| 28 | dd. | S.C. Code Ann. §§ 36-2-314, et seq.; |

ee.    S.D. Codified Laws §§ 57A-2-314, et seq.;

ff.    Tex. Bus. & Com. Code Ann. §§ 2.314, et seq.;

gg.    Utah Code Ann. §§ 70A-2-314, et seq.;

hh.    Va. Code Ann. §§ 8.2-314, et seq.;

ii.    Vt. Stat. Ann. Tit. 9A, §§ 2-314, et seq.;

jj.    W. Va. Code §§ 46-2-314, et seq.; and

kk.    Wyo. Stat. Ann. §§ 34.1-2-314, et seq.

78.    Defendant manufactured and distributed Class Devices throughout the United States for sale to Plaintiff and the Class members.

79.    Defendant impliedly warranted to Plaintiff and Class members that their Class Devices were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

80.    As alleged herein, Defendant breached the implied warranty of merchantability because the Class Devices suffer from the Defect.  The Class Devices are therefore defective, unmerchantable, and unfit for their ordinary, intended purpose.

81.    After Plaintiff experienced the Defect and contacted Defendant's customer service line without relief, Plaintiff gave reasonable and adequate notice to Defendant that the Class Devices were defective, unmerchantable, and unfit for their intended use or purpose.

82.    Due to the Defect, Plaintiff and the members of the Class are unable to operate their vacuums as intended, substantially free from defects.  The Class Devices do not provide reliable vacuuming functionality to Plaintiff and Class members.  As a result, Plaintiff and members of the Class are unable to use their Class Devices for the purposes for which they purchased them.

83.    As a direct and proximate result of the Defect in the Class Devices, Plaintiff has sustained injuries, damages, and losses.

84.    Any attempt by Defendant to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect also is procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302, as adopted by the states listed in this Count. Defendant knew

or should have known about the Defect in the Class Devices prior to selling Class Devices while continuing to market Class Devices as safe and reliable, had unequal bargaining power and misrepresented the Class Devices' reliability, and any temporal or remedial limitations or disclaimers unreasonably favor Defendant and fail Plaintiff's and Class members' reasonable expectations for product performance.

85.    Actual and/or constructive notice was duly given to Defendant of the breaches of these warranties, and Defendant has yet failed to cure.

86.    As a direct and proximate result of the breaches of these implied warranties Plaintiff and the Class have suffered damages, injury in fact and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to other property.

87.    Defendant is liable to Plaintiff and Class members for damages caused by the above Defect.

88.    Plaintiff demands judgment against Defendant for compensatory damages for himself and each Class member, for the establishment of a common fund, plus additional remedies as this Court deems fit.

## SECOND CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(On Behalf of the Nationwide Class or, in the Alternative, the California Class)**

89.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

90.    Plaintiff brings this claim individually and on behalf of the Nationwide Class, or, in the alternative, on behalf of the California Class.

91.    Plaintiff's individual claim is brought under the laws of the State in which he purchased his Class Device, as are the claims of absent members of the Nationwide Class.

92.    Plaintiff brings claims on behalf of the Class under the laws of the following States as codified below:

    a.    Ala. Code § 7-2-313, et seq.;

23

| | | |
|---|---|---|
| 1 | b. | Alaska Stat. § 45.02.313, et seq.; |
| 2 | c. | Ariz. Rev. Stat. § 47-2313, et seq.; |
| 3 | d. | Ark. Code § 4-2-313, et seq.; |
| 4 | e. | Cal. Com. Code § 2313, et seq.; |
| 5 | f. | Cal. Civ. Code §§ 1791.2 & 1793.2(d) (the "Song-Beverly Act"); |
| 6 | g. | Colo. Rev. Stat. § 4-2-313, et seq.; |
| 7 | h. | Conn. Gen. Stat. § 42a-2-313, et seq.; |
| 8 | i. | 6 Del. C. § 2-313, et seq.; |
| 9 | j. | D.C. Code § 28:2-313, et seq.; |
| 10 | k. | Fla. Code § 672.313, et seq.; |
| 11 | l. | O.C.G.A. § 11-2-313, et seq.; |
| 12 | m. | Haw. Rev. Stat. § 490:2-313, et seq.; |
| 13 | n. | Idaho Code § 28-2-313, et seq.; |
| 14 | o. | 810 Ill. Comp. Stat. 5/2-313, et seq.; |
| 15 | p. | Ind. Code § 26-1-2-313, et seq.; |
| 16 | q. | Iowa Code § 554.2313, et seq.; |
| 17 | r. | Kan. Stat. § 84-2-313, et seq.; |
| 18 | s. | Ky. Rev. Stat. § 355.2-313, et seq.; |
| 19 | t. | La. Rev. Stat § 9:2800.53(6), et seq.; |
| 20 | u. | 11 M.R.S.A. § 2-313, et seq.; |
| 21 | v. | Mass. Code 106, § 2-313, et seq.; |
| 22 | w. | Md. Code Ann., Com. Law § 2-313, et seq.; |
| 23 | x. | Mich. Comp. Laws 440.2313, et seq.; |
| 24 | y. | Minn. Stat. § 336.2-313, et seq.; |
| 25 | z. | Miss. Code § 75-2-313, et seq.; |
| 26 | aa. | Mo. Rev. Stat. § 400.2-313, et seq.; |
| 27 | bb. | Mont. Code § 30-2-313, et seq.; |
| 28 | cc. | Neb. U.C.C. § 2-313, et seq.; |

dd. Nev. Rev. Stat. § 104.2313, et seq.;

ee. N.H. Rev. Stat. § 382-A:2-313, et seq.;

ff. N.J. Stat. § 12A:2-313, et seq.;

gg. N.M. Stat. § 55-2-313, et seq.;

hh. N.Y. U.C.C. § 2-313, et seq.;

ii. N.C. Gen. Stat. § 25-2-313, et seq.;

jj. N.D. Cent. Code § 41-02-30, et seq.;

kk. Ohio Rev. Code § 1302.26, et seq.;

ll. Okla. Stat. Tit. 12A, § 2-313, et seq.;

mm. Or. Rev. Stat. § 72.3130, et seq.;

nn. 13 Pa. Cons. Stat. § 2313, et seq.;

oo. R.I. Gen. Laws § 6A-2-313, et seq.;

pp. S.C. Code § 36-2-313, et seq.;

qq. S.D. Codified Laws § 57A-2-313, et seq.;

rr. Tenn. Code § 47-2-313, et seq.;

ss. V.T.C.A., Bus. & C. § 2.313, et seq.;

tt. Utah Code § 70A-2-313, et seq.;

uu. Vt. Stat. Tit. 9A, § 2-313, et seq.;

vv. Va. Code § 8.2-313, et seq.;

ww. Wash. Rev. Code § 62A.2-313, et seq.;

xx. W. Va. Code § 46-2-313, et seq.;

yy. Wis. Stat. § 402.313, et seq.; and

zz. Wyo. Stat. § 34.1-2-313, et seq.

93.     Defendant provided all purchasers of the Class Devices with the same express warranties described herein, which became part of the basis of the bargain.

94.     The parts affected by the Defect were distributed by Defendant in the Class Devices and are covered by the warranties Defendant provided to all purchasers of Class Devices.

95.     Defendant breached these warranties by selling Class Devices with the Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

96.     As a direct and proximate cause of Defendant's breach, Plaintiff and the members of the Class bought Class Devices they otherwise would not have, overpaid for them, did not receive the benefit of their bargain, and their Class Devices suffered a diminution in value. Plaintiff and the Class have also incurred and will continue to incur costs related to the diagnosis and repair of the Defect.

97.     Defendant's attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here.

98.     Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

99.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. A gross disparity in bargaining power existed between Defendant and the Class members, and Defendant knew or should have known that the Class Devices were defective at the time of sale and would fail well before their useful lives.

100.    Plaintiff and the Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## THIRD CAUSE OF ACTION

### FRAUD/FRAUDULENT CONCEALMENT

### (On Behalf of the Nationwide Class or, in the Alternative, the California Class)

101.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

102.    Plaintiff's individual claim is brought under the laws of the State in which he purchased his Class Device (California). The claims of absent members of the Nationwide Class

and California Class are brought under the laws of the State in which they purchased their Class Devices.

103.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling the Class Devices.

104.    Defendant, acting through its representatives or agents, sold the Class Devices throughout the United States.

105.    Defendant willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Class Devices, including that they suffered from the Defect. As explained above, Defendant's conduct was knowing and intentional as evidenced in part by its failure to disclose the Defect notwithstanding (1) its public acknowledgement of the problem; (2) its own records of customers' complaints, (3) supplier repair records, (4) warranty and post-warranty claims, and (5) internal pre-sale durability testing and internal investigations. Furthermore, in response to consumer complaints within the warranty period regarding the Defect, Defendant replaced the defective motors with the same defective component to ensure that the defect will manifest again outside of the warranty period, or denied the warranty claim entirely. Defendant also provided troubleshooting instructions implying that any issues are the fault of the user and result from improper use, while knowing that the Devices are defective.

106.    Rather than inform consumers of the truth regarding the Defect, Defendant concealed material information related to the Defect.

107.    Defendant's omissions were material because the Defect has a substantial impact not simply on the convenience and cost of vacuum maintenance, but also on the reliability of the Class Devices over time.

108.    Defendant omitted this material information to drive up sales and maintain its market power, as consumers would not have purchased the Class Devices, or would have paid substantially less for them, had they known the truth.

109.    Plaintiff and the Class members had no way of reasonably discovering the Defect prior to purchase.

110.    Plaintiff and Class members could not have discovered the above information on their own, because Defendant was in the exclusive possession of such information or, at minimum, had superior knowledge of the defect.

111.    Although Defendant has a duty to ensure the accuracy of information regarding the performance of its Class Devices, it did not fulfill these duties.

112.    Defendant was under a duty to Plaintiff and the Class members to disclose the defective nature of the Class Devices because:

    a.  Defendant was in a superior position to know the true state of facts about the Defect and associated repair costs in the Class Devices;

    b.  Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Devices had a defect until manifestation of the Defect;

    c.  Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the Defect and the associated repair costs that it causes until the manifestation of the Defect;

    d.  Defendant made partial representations regarding the attributes and benefits of the Devices while deceptively omitting the existence of the Defect; and

    e.  Defendant actively concealed the Defect and the associated repair costs by asserting to Plaintiff and the Class members that their vacuums were not defective and by providing replacement motors equipped with the same Defect.

113.    Defendant could have and should have prominently disclosed the Defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendant disclosed the Defect in this manner, consumers would have been aware of it.

114.    Plaintiff and Class members sustained injury due to the purchase of Class Devices that suffered from the Defect.

115.    Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff and Class members' rights and well-being, and in part to enrich itself at the expense of consumers. Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration

of competitor's vacuums. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(On Behalf of the Nationwide Class or, in the Alternative, the California Class)**

116.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

117.    This claim is pled in the alternative to Plaintiff's contract-based claims.

118.    Plaintiff's individual claim is brought under the laws of the State in which he purchased his Class Device (California).  The claims of absent members of the Nationwide Class and California Class are brought under the laws of the State in which they purchased their Class Devices.

119.    Defendant knew or should have known that Plaintiff and the Class paid for the Class Devices with the expectation that they would perform as represented and were free from defects.

120.    Plaintiff and the Class conferred substantial benefits on Defendant by purchasing the defective Class Devices. Defendant knowingly and willingly accepted and enjoyed those benefits.

121.    Defendant's retention of these benefits is inequitable.

122.    As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

## FIFTH CAUSE OF ACTION
**VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**

**(On Behalf of the California Class)**

123.    Plaintiff and the Class incorporate by reference each preceding paragraph as though fully set forth at length herein.

124.    Defendant is a person as that term is defined in California Civil Code § 1761(c).

125.    Plaintiff and the Class members are "consumers" as that term is defined in California Civil Code §1761(d).

126.    Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, specifically by knowingly and intentionally concealing from Plaintiff and Class members that the Class Devices suffer from the Defect (and the costs, risks, and diminished value of the Class Devices as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;
>
> (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;
>
> (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
>
> (a)(9) Advertising goods and services with the intent not to sell them as advertised.

127.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public.

128.    Defendant knew that the Class Devices were defectively designed, would fail prematurely, and contained the Defect that rendered them inoperable and/or not suitable for their intended use.

129.    Defendant was under a duty to Plaintiff and the Class members to disclose the defective nature of the Class Devices because:

> a.    Defendant was in a superior position to know the true state of facts about the Defect and associated repair costs in the Class Devices;

b. Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Devices had a defect until manifestation of the Defect;

c. Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the Defect and the associated repair costs that it causes until the manifestation of the Defect;

d. Defendant made partial representations regarding the attributes and benefits of the Devices while deceptively omitting the existence of the Defect; and

e. Defendant actively concealed the Defect and the associated repair costs by asserting to Plaintiff and the Class members that their vacuums were not defective and by providing replacement motors equipped with the same Defect.

130.    Defendant could have and should have prominently disclosed the Defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendant disclosed the Defect in this manner, consumers would have been aware of it.

131.    In failing to disclose the Defect and the associated risks and repair costs that result from it, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

132.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Devices or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Class Devices, they would not have purchased the Class Devices or would have paid less for them.

133.    On or about April 25, 2023, Plaintiff provided Defendant with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) and seeks only injunctive relief at this time. After the 30-day notice period elapses, Plaintiff intends to amend this Complaint to seek monetary damages, including actual, restitutionary, and punitive damages. Plaintiff's and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices. Therefore, Plaintiff and the Class members will seek all relief available under the CLRA.

**SIXTH CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200 – Fraud, Unfair, and Unlawful)**

**(On Behalf of the California Class)**

134.    Plaintiff and the Class incorporate by reference each preceding paragraph as though fully set forth at length herein.

135.    Plaintiff brings this claim on behalf of himself and on behalf of the Class against Defendant.

136.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

137.    Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class members that the Class Devices suffer from the Defect (and the costs and diminished value of the vacuums as a result of these problems).

138.    Defendant was under a duty to Plaintiff and the Class members to disclose the defective nature of the Class Devices because:

    a.  Defendant was in a superior position to know the true state of facts about the Defect and associated repair costs in the Class Devices;

    b.  Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Devices had a defect until manifestation of the Defect;

    c.  Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the Defect and the associated repair costs that it causes until the manifestation of the Defect;

    d.  Defendant made partial representations regarding the attributes and benefits of the Devices while deceptively omitting the existence of the Defect; and

e.   Defendant actively concealed the Defect and the associated repair costs by asserting to Plaintiff and the Class members that their vacuums were not defective and by providing replacement motors equipped with the same Defect.

139.   Defendant could have and should have prominently disclosed the Defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendant disclosed the Defect in this manner, consumers would have been aware of it.

140.   These acts and practices have deceived Plaintiff and are likely to deceive the public. In failing to disclose the Defect and suppressing material facts from Plaintiff and Class members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and Class members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

141.   Defendant's conduct is unfair in contravention of the UCL because it violates California public policy, legislatively declared in both the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act. The CLRA prohibits unfair and deceptive business practices. Defendant violated the CLRA because it sold defective Devices as further described in this Complaint. The Song-Beverly Consumer Warranty Act requires a manufacturer to ensure that goods it places on the market are merchantable and fit for their ordinary and intended purposes. Defendant violated the Song-Beverly Act because the Devices contain a defective motor as further described in this Complaint.

142.   Defendant also acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner in at least the following respects:

a.   Defendant promoted and sold the Devices knowing that the motor would fail either within the warranty period or shortly thereafter, and would not last for any meaningful amount of time beyond the warranty period.

b.   Defendant made repairs during the warranty period that caused instances of failure and unbeknownst to consumers did not provide a permanent fix.

c.    Defendant minimized the scope of the problem by offering to troubleshoot the Defects while knowing such attempts were futile.

d.    Knowingly selling defective products in hopes of forcing consumers to purchase replacement products.

143.    The injuries suffered by Plaintiff and Class members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and Class members should have reasonably avoided.  The Defect was latent and could not have easily been discovered pre-purchase

144.    Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

145.    Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

146.    In the alternative to those claims seeking remedies at law, Plaintiffs and Class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). Furthermore, the applicable standard and elements for a violation of the UCL "unfair" and "unlawful" prongs are different from the standard and elements that govern legal claims under the CLRA and for common law fraud.

1

## **REQUEST FOR RELIEF**

2      WHEREFORE, Plaintiff, individually and on behalf of members of the Class defined

3   above, respectfully request that the Court enter judgment against Defendant and award the

4   following relief:

5      A.     Certification of this action as a class action pursuant to Rule 23 of the Federal

6   Rules of Civil Procedure, declaring Plaintiff as the representative of the Class, and Plaintiff's

7   counsel as counsel for the Class;

8      B.     An order awarding declaratory relief and temporarily and permanently enjoining

9   Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices

10  alleged in this Complaint;

11     C.     Appropriate injunctive and/or declaratory relief, including, without limitation, an

12  order that requires Defendant to repair, recall, and/or replace the Class Devices and to extend

13  the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff

14  and class members with appropriate curative notice regarding the existence and cause of the

15  Defect;

16     D.     An award of appropriate damages to repair or replace the Class Devices;

17     E.     A declaration that Defendant is financially responsible for all Class notice and

18  the administration of Class relief;

19     F.     An order awarding any applicable statutory and civil penalties;

20     G.     An order requiring Defendant to pay both pre- and post-judgment interest on any

21  amounts awarded;

22     H.     An award of costs, expenses, and attorneys' fees as permitted by law; and

23     I.     Such other or further relief as the Court may deem appropriate, just, and

24  equitable.

25

## **DEMAND FOR JURY TRIAL**

26     Plaintiff hereby demands a jury trial for all claims so triable.

27

28

1   DATED: May 11, 2023                Respectfully submitted,

2                                By:____*/s/ Alexander E. Wolf*_____

3                                     Alexander E. Wolf

4                                Alexander E. Wolf (SBN 299775)
                                 **MILBERG COLEMAN BRYSON**
5                                **PHILLIPS GROSSMAN, PLLC**
6                                280 S. Beverly Drive
                                 Beverly Hills, CA 90212
7                                Telephone: (858) 209-6941
                                 Fax: (865) 522-0049
8
                                 Gary M. Klinger (PHV forthcoming)
9                                **MILBERG COLEMAN BRYSON**
10                               **PHILLIPS GROSSMAN, PLLC**
                                 227 W. Monroe Street, Suite 2100
11                               Chicago, Illinois 60606
                                 Telephone: 866.252.0878
12
                                 Daniel O. Herrera (PHV forthcoming)
13                               Paige Smith (PHV forthcoming)
                                 **Cafferty Clobes Meriwether**
14                                 **& Sprengel LLP**
                                 1350 S. LaSalle St., Suite 3200
15                               Chicago, Illinois 60603
                                 Phone: (312) 782-4880
16                               Facsimile: (312) 782-4485
                                 dherrera@caffertyclobes.com
17                               psmith@caffertyclobes.com
18
                                 Joseph G. Sauder (PHV forthcoming)
19                               Joseph B. Kenney (PHV forthcoming)
20                               **SAUDER SCHELKOPF**
                                 1109 Lancaster Avenue
21                               Berwyn, PA 19312
                                 Telephone: (888) 711-9975
22                               Facsimile: (610) 421-1326
                                 jgs@sstriallawyers.com
23                               jbk@sstriallawyers.com
24
25                               *Attorneys for Plaintiff*

26

27

28